FILED
United States Court of Appeals
Tenth Circuit

February 7, 2017

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

THOMAS E. PEREZ, Secretary of
Labor, United States Department of
Labor,

      Plaintiff - Appellee,

v.

EL TEQUILA, LLC; CARLOS
AGUIRRE, individually,

      Defendants - Appellants.

No. 16-5002

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 4:12-CV-00588-JED-PJC)**

---

Bill V. Wilkinson, Tulsa, Oklahoma, for Defendants - Appellants.

Jesse Z. Grauman (M. Patricia Smith, Solicitor of Labor, Jennifer S. Brand,
Associate Solicitor, and Paul L. Frieden, Counsel for Appellate Litigation, of U.S.
Department of Labor, Office of the Solicitor, on the brief), Washington, D.C., for
Plaintiff - Appellee.

---

Before **KELLY**, **MATHESON**, and **McHUGH**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

      Defendants-Appellants El Tequila, LLC, and Carlos Aguirre (collectively,

"El Tequila") appeal from a $2,137,627.44 judgment in favor of Plaintiff-Appellee, Secretary of the Department of Labor (Secretary). 3 Aplt. App. 352; see also Perez v. El Tequila, LLC, No. 12-CV-588-JED-PJC, 2015 WL 4173541 (N.D. Okla. July 10, 2015) (partial summary judgment opinion and order). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

El Tequila is a restaurant with four locations (Harvard, Broken Arrow, Owasso, and Memorial) in Tulsa, Oklahoma. In December 2010, an employee from the Harvard location complained to the Department of Labor's Wage and Hour Division (WHD). 23 Aplee. Supp. App. 1814. This complaint prompted the WHD to investigate the Harvard location (First Harvard Investigation). The First Harvard Investigation consisted of interviews with employees and El Tequila's owner, Mr. Aguirre; examining payroll documents; and touring the restaurant. Id. at 1822. The payroll records showed employees were paid $7.25 per hour (the minimum wage), worked about forty hours a week, and received overtime when required. See 10 Aplee. Supp. App. 780–801. Interviews with Mr. Aguirre and his employees confirmed this information. 23 Aplee. Supp. App. 1822–23. The WHD investigator only found recordkeeping violations, and closed the First Harvard Investigation. 16 Aplee. Supp. App. 1243.

Additional employee complaints prompted the WHD to investigate the

Harvard location again (Second Harvard Investigation). 23 Aplee. Supp. App. 1825–27. This time, the WHD investigator arrived at the Harvard location unannounced, id. at 1827, and discovered several violations. First, the records Mr. Aguirre provided during the First Harvard Investigation, known as middle sheets, were based on his false summaries of how many hours employees worked, rather than actual clock-in and clock-out times. 16 Aplee. Supp. App. 1300; 23 Aplee. Supp. App. 1834. During the Second Harvard Investigation, Mr. Aguirre provided the WHD investigator with time sheets that contained actual clock-in and clock-out times. 23 Aplee. Supp. App. 1829–31. Mr. Aguirre withheld these time sheets during the First Harvard Investigation, and many time entries had been "whited-out" and edited to conform with the Federal Labor Standards Act (FLSA). Id. at 1831.

Second, employees revealed that Mr. Aguirre instructed them to lie in their interviews during the First Harvard Investigation. Id. at 1831–32. This time, employees told the WHD investigator that they had been working from 60 to 70 hours per week and were paid a salary. Id. at 1831. They said the time sheets were not accurate, and "that they were forced to sign" them. Id.

Mr. Aguirre admitted that the time sheets and middle sheets were not correct, and that he told his employees what to say in their interviews. Id. at 1835, 1876. The WHD investigator told Mr. Aguirre he had violated the FLSA because his employees' salaries were below minimum wage, he did not pay them

- 3 -

overtime, and because he committed recordkeeping violations.  Id. at 1836.  El Tequila agreed to pay $261,760.77 to its fifty-eight employees at the Harvard location for unpaid wages from December 2009 to August 2011.  10 Aplee. Supp. App. 802–07.

In September 2011, the WHD investigated El Tequila's Memorial, Owasso, and Broken Arrow locations because Mr. Aguirre admitted the same impermissible payment practices were occurring there.  23 Aplee. Supp. App. 1844.  The WHD investigator discovered FLSA violations for these other three locations.  Id. at 1851.  Relying on El Tequila's expert report, the Secretary asserts that El Tequila owes $386,887.82 to its employees at these locations for wages from October 2009 to August 2011.  Aplee. Br. at 12–13.

After the investigations, El Tequila changed the way it paid its employees, but continued to withhold wages from them.  El Tequila started paying hourly by check, and employees clocked in and out on the restaurants' touch panel cash registers (Casio QT 6600).  16 Aplee. Supp. App. 1228, 1233–34, 1257.  The registers generated weekly reports of employees' regular time and overtime.  See id. at 1258; see, e.g., 9 Aplee. Supp. App. 698–709.  Managers had the ability to edit the time recorded by the registers.  16 Aplee. Supp. App. 1357–58.  Employee hours that had been recorded on the registers were manually removed or reduced many times, apparently by managers.

El Tequila improperly reduced its employees' hours in yet another way.

- 4 -

Rather than provide the register reports themselves, Mr. Aguirre gave El Tequila's accountant summary sheets containing an alphabetical listing of employees and indications of hours worked each day and total weekly hours and tips. 16 Aplee. Supp. App. 1261; see, e.g., 9 Aplee. Supp. App. 745–60. These middle sheets, compiled by Mr. Aguirre and other managers, indicated employees worked even fewer hours than did the altered records from the registers. The Secretary estimates that El Tequila owes its employees at all four locations $636,483.28 for wages from August 7, 2011, to June 30, 2014. Aplee. Br. at 15.

In October 2012, the Secretary filed suit because El Tequila refused to pay its employees at the Broken Arrow, Owasso, and Memorial locations for wages from October 2009 to August 2011. In a Third Amended Complaint (TAC) filed on February 5, 2015, the Secretary alleged that El Tequila managers and Mr. Aguirre "manually altered the electronic time record weekly reports in order to reduce the actual hours shown as worked by employees." 1 Aplt. Am. App. 31. El Tequila was required to respond to the TAC by February 23, eighteen days later, but did not. The Secretary filed a motion for summary judgment on March 19, id. at 77–78, and El Tequila filed its motion to file an out-of-time answer to the TAC the next day. Id. at 119–20. The motion explained that El Tequila did not timely respond to the TAC because the answer's due date "was not properly docketed." Id. at 119. The district court denied El Tequila's motion to file its answer out of time for lack of excusable neglect, and therefore accepted

as true the allegation that El Tequila managers manually altered the register time reports so as to reduce the actual hours shown as worked by employees. 2 Aplt. Am. App. 150–57.

On April 10, El Tequila filed another motion to file out-of-time responses to several of the Secretary's pending motions, this time citing counsel's medical problems as the reason for his delay. 1 Aplt. Am. App. 137–40. The district court partially granted this motion because it was unopposed and "[a] recently diagnosed medical condition ha[d] diminished [El Tequila's counsel's] productivity." 2 Aplt. Am. App. 158.

The district court also granted in part the Secretary's motion for summary judgment. Perez, 2015 WL 4173541, at *15. It accepted the Secretary's allegation that El Tequila and Mr. Aguirre qualify as employers under the FLSA and violated the FLSA's overtime, minimum wage, and recordkeeping requirements because El Tequila did not contest these claims. Id. at *3–4, n.1. The district court found that El Tequila was liable for liquidated damages, id. at *11–13, and enjoined El Tequila from violating the FLSA further, id. at *14. It also accepted most of the Secretary's back-pay calculations in part because El Tequila failed to identify evidence that it paid its employees discretionary bonuses. Id. at *9–11. However, the court denied the motion for summary judgment with respect to whether El Tequila's violations of the FLSA were willful. Id. at *4–9. At trial, the jury found that El Tequila did not willfully

violate the FLSA. 3 Aplt. Am. App. 306. Under Federal Rule of Civil Procedure 50(b), the Secretary renewed its motion for judgment as a matter of law, which the court granted, holding that no reasonable jury could have arrived at that conclusion. Id. at 332–50.

On appeal, El Tequila argues that (1) the Secretary should have accounted for discretionary bonuses in calculating overtime wages; (2) El Tequila's failure to timely respond to the TAC was excusable neglect; (3) the district court should not have relied upon an admission (based on the failure to timely respond to the TAC) or the lack of a response to certain issues in granting summary judgment, but instead should have considered lesser sanctions; and (4) the district court erred in granting the Secretary's motion for judgment as a matter of law with respect to willfulness.

Discussion

We begin by reviewing the district court's summary judgment rulings. Our review is de novo, and we draw reasonable inferences and resolve factual disputes in favor of the non-movants. Yousuf v. Cohlmia, 741 F.3d 31, 37 (10th Cir. 2014). Summary judgment may be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A.     Discretionary Bonuses

The FLSA requires employers to pay their employees overtime for each hour worked over 40 in a workweek.  29 U.S.C. § 207(a)(1).  The overtime rate is at least one and one-half times the employee's regular rate.  Id.  An employee's regular rate "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," subject to eight exemptions.  Id. § 207(e).  Discretionary bonuses are exempt from the regular rate.  Id. § 207(e)(3).  Generally, employers that violate the FLSA's overtime and minimum wage requirements are liable not just for unpaid wages, but also for "an additional equal amount as liquidated damages."  Id. § 216(b).

El Tequila argues that the Secretary's back-wage calculation was incorrect because it improperly included discretionary bonuses in the employees' regular rates.  Aplt. Br. at 22.  According to El Tequila, the Secretary had the burden to identify and exclude discretionary bonuses from its calculations and to so indicate in its moving papers.  See Aplt. Br. at 22–23; Aplt. Reply Br. at 9–12.  But claiming discretionary bonuses is an affirmative defense for which the employer, not the Secretary, bears the burden of proof.  Spradling v. City of Tulsa, 95 F.3d 1492, 1495 (10th Cir. 1996); see Baker v. Barnard Constr. Co., 146 F.3d 1214, 1216–17 n.1 (10th Cir. 1998).

Regardless, El Tequila argues sufficient evidence exists tending to show that employees were paid discretionary bonuses.  Aplt. Br. at 24–27.  We

disagree. El Tequila relies upon the testimony of its CPA. But that testimony only indicates that discretionary bonuses should not be included in the regular rate, not that El Tequila paid discretionary bonuses. Id. at 24–26. El Tequila also relies upon Mr. Aguirre's affidavit: "I declare that . . . the Department of Labor is imposing overtime charges on discretionary bonuses paid by El Tequila." 2 Aplt. Am. App. 174. But such a conclusory statement, devoid of facts, is insufficient to create a genuine issue of material fact. Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd., 616 F.3d 1086, 1095 n.2 (10th Cir. 2010). Summary judgment on this issue was granted correctly, not as a sanction, but on the merits.

B.      Excusable Neglect

El Tequila argues that the district court should have allowed it to file an answer to the TAC because its failure to timely do so was excusable neglect. We review for abuse of discretion. Quigley v. Rosenthal, 427 F.3d 1232, 1237 (10th Cir. 2005).

Courts may allow untimely filings "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). A finding of excusable neglect depends on four factors: "[1] the danger of prejudice to the [non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993) (citation omitted).

The most important factor is the third; an inadequate explanation for delay may, by itself, be sufficient to reject a finding of excusable neglect. See United States v. Torres, 372 F.3d 1159, 1163 (10th Cir. 2004).

The only factor the district court found that weighed against El Tequila was its reason for the delay: counsel's failure to properly docket the answer's due date. 2 Aplt. Am. App. 153–57. On that basis alone, the district court concluded El Tequila had not made a showing of excusable neglect, and denied its motion to file an out-of-time answer. Id. El Tequila now argues that the district court overlooked its counsel's medical condition as a reason for its delay. Aplt. Br. at 40. We disagree.

A lawyer's medical problems or serious health challenges may be an adequate justification for delayed filings, and therefore can be sufficient for a finding of excusable neglect. See United States v. Ruth, 946 F.2d 110, 112 n.2 (10th Cir. 1991). But El Tequila did not reference counsel's medical problems as its reason for delay. See 1 Aplt. Am. App. 119–20. Rather, El Tequila stated that it failed to respond to the TAC because the answer's due date "was not properly docketed." Id. at 119. Although the district court knew of counsel's medical problems before El Tequila filed its motion to file an out-of-time answer, see id. at 50–53, counsel did not identify this as the reason for delay like he did in other motions, compare id., with id. at 137–40.

Furthermore, El Tequila's counsel explained in its motion that he "did not

- 10 -

realize the failure to timely file the [a]nswer until March 19, 2015," when the Secretary moved for summary judgment, id. at 119, which suggests that counsel's true reason for delay was a failure to calendar the answer's due date. We note that the actual deadline for the answer appears to have been February 23, 2015, not February 26, 2015, as then thought by counsel. 1 Aplt. Am. App. 119. But more than a three-day delay is at issue here.

In the end, the district court considered the appropriate factors and we cannot say that it abused its discretion in denying El Tequila's motion to file an out-of-time answer. Had counsel's error been isolated, our decision might be different, see Jennings v. Rivers, 394 F.3d 850, 857 (10th Cir. 2005), but it was not, 2 Aplt. Am. App. 156–57. Moreover, as we discuss below, the district court's conclusion that El Tequila had violated the minimum wage, overtime, and recordkeeping provisions of the FLSA was based on the failure to respond adequately to these contentions on summary judgment. Perez, 2015 WL 4173541, at *3 n.1. Although the district court also relied upon the admission of altered records, the significance of the admission must be viewed in the context of what occurred in the summary judgment proceeding.

C. Deemed Admission

El Tequila asserts that the district court's reliance on a deemed admission in granting the Secretary's motion for summary judgment was improper. We review de novo. Yousuf, 741 F.3d at 37.

- 11 -

"An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). El Tequila challenges the district court's reliance upon the Secretary's contention that El Tequila's managers "manually altered the electronic time record weekly reports in order to reduce the actual hours shown as worked by employees." 1 Aplt. Am. App. 31. This allegation was included in the TAC, and was deemed admitted because, as explained above, El Tequila failed to timely submit an answer. Perez, 2015 WL 4173541, at *7. El Tequila argues that granting summary judgment based on this was a sanction, and that the district court did not conduct the proper analysis to issue it. Aplt. Br. at 29–34. But the district court's reliance upon this fact in granting summary judgment was not a sanction, but rather the effect of failing to deny. Fed. R. Civ. P. 8(b)(6). The Secretary's use of this admission in moving for summary judgment was also proper. Id. 56(c)(1)(A).

D.    Summary Judgment Based on a Failure to Respond

The district court accepted the Secretary's assertion that El Tequila violated the FLSA's overtime and minimum wage requirements because El Tequila failed to challenge it. Perez, 2015 WL 4173541, at *3 n.1. The Secretary so argued in his motion for summary judgment by presenting ten legal grounds supported by 41 undisputed facts. 1 Aplt. Am. App. 104–09. Consistent with the local rules, El Tequila responded with its own set of ten disputed facts, refuting

approximately eight of the Secretary's 41 undisputed facts.[1]  See N.D. Okla.

LCvR 56.1(c).  For example, it attempted to challenge the contentions that

employees were not paid for all hours worked, that it had told employees to

misrepresent the facts, and that its expert had found overtime violations.  2 Aplt.

Am. App. 184–86.  El Tequila maintained that the WHD analysis was inaccurate

given that valid explanations exist for some of the discrepancies.  Id. at 186.  But

rather than respond to each of the Secretary's ten legal grounds advanced, El

Tequila responded only to four of them.  See id. at 180–200.

El Tequila argues that whether it had violated the FLSA's minimum wage

and overtime provisions was controverted.  The local rule provides that the failure

to controvert a movant's material facts means they are admitted.  N.D. Okla.

LCvR 56.1(c); accord Fed. R. Civ. P. 56(e)(2).  Although the district court

referenced the rule, Perez, 2015 WL 4173541, at *3, the initial problem is that El

Tequila failed to address the specific contentions in the Secretary's motion that it

had violated the minimum wage and overtime provisions.  Instead, it appears to

have selected four of the ten grounds relied upon by the Secretary in moving for

summary judgment.  Citing Coffey v. Healthtrust, Inc., 955 F.2d 1388, 1393

(10th Cir. 1992), the district court concluded that El Tequila's failure to challenge

or rebut arguments on summary judgment warranted the grant of summary

---

[1]  We note that it would be far easier if a non-movant would take a position on each ostensibly undisputed fact.

judgment. <u>Perez</u>, 2015 WL 4173541, at *3–4.

Of course, in granting summary judgment based upon a failure to respond, a district court must still determine that summary judgment is appropriate. Fed. R. Civ. P. 56(e)(3) advisory committee's notes to 2010 amendment ("Once the court has determined the set of facts — both those it has chosen to consider undisputed for want of a proper response or reply and any that cannot be genuinely disputed despite a procedurally proper response or reply — it must determine the legal consequences of these facts and the permissible inferences from them."). After reviewing the summary judgment evidence El Tequila now relies upon, we conclude that it is not significantly probative and does not create a genuine issue of material fact. Mr. Aguirre's statement that he believed employees were paid for hours worked and paid by the job, 2 Aplt. Am. App. 184, simply does not controvert the specific evidence tending to show pervasive minimum wage and overtime violations. Mr. Aguirre conceded that the time records were not accurate, <u>id.</u>, thus allowing estimation by the Secretary. Although El Tequila now relies upon its expert's opinion that minimum wage violations were absent, it did not so inform the district court. In its statement of disputed facts, El Tequila focused on disclaiming the expert's "guestimate" of overtime violations. Although a district court has the discretion to go beyond the propositions and cited materials advanced by the non-movant, it is not required to do so. Fed. R. Civ. P. 56(c)(3); <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664,

672 (10th Cir. 1998). What is troubling in this case is that El Tequila never comes to grips with its own failure to adequately address the arguments contained in the Secretary's motion for summary judgment. The district court is not required to integrate a non-movant's statement of disputed facts with the law, and counter the propositions advanced by the movant. Were it that way, the district court would act as an advocate, rather than a neutral arbiter.

E.      Willfulness

El Tequila challenges the district court's grant of the Secretary's motion for judgment as a matter of law after the jury reached a contrary result. We review de novo and apply the same standard as the district court. Advantor Capital Corp. v. Yeary, 136 F.3d 1259, 1263 (10th Cir. 1998). Only if the evidence points one way and is not susceptible to reasonable, contrary inferences supporting the non-movant is judgment as a matter of law appropriate. Id. Our task is to determine whether a jury could render a verdict in favor of the non-movant. Wolfgang v. Mid-Am. Motorsports, Inc., 111 F.3d 1515, 1522 (10th Cir. 1997). In so doing, we must construe evidence and inferences in favor of the nonmoving party, and avoid "substitut[ing] our judgment for that of the jury." Id.

"The FLSA generally imposes a two-year statute of limitations unless the defendant's violations are shown to be willful, in which case a three-year period applies." Mumby v. Pure Energy Servs. (USA), Inc., 636 F.3d 1266, 1270 (10th Cir. 2011) (citing 29 U.S.C. § 255(a)). Employers willfully violate the FLSA if

- 15 -

they "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

El Tequila first argues the Secretary relied on arguments in his Rule 50(b) motion that were not included in his Rule 50(a) motions. Aplt. Br. at 47–48. Arguments presented in a Rule 50(b) motion cannot be considered if not initially asserted in a Rule 50(a) motion. Home Loan Inv. Co. v. St. Paul Mercury Ins. Co., 827 F.3d 1256, 1266 (10th Cir. 2016). In his Rule 50(b) motion, the Secretary argued that Mr. Aguirre willfully violated the FLSA from October 2009 to October 2010 by: (1) falsifying payroll records, (2) withholding records requested by the WHD investigator, (3) lying to the WHD investigator and instructing his employees to lie, (4) recklessly disregarding his duty to determine whether it was violating the FLSA, (5) recklessly disregarding FLSA requirements, (6) and recklessly disregarding his duty to keep accurate records. 3 Aplt. Am. App. 307–30. The Secretary's Rule 50(a) motions contained identical arguments. See 4 Aplt. Am. App. at 470–73, 495–509. It is immaterial that the Secretary did not rely upon the exact same facts in the motions — "technical precision is unnecessary." Anderson v. United Tel. Co. of Kan., 933 F.2d 1500, 1503 (10th Cir. 1991) (citation omitted). Therefore, the six arguments presented in the Secretary's Rule 50(b) motion were properly before the district court.

El Tequila contends that evidence outside the relevant time period of October 2009 to October 2010 may have supported the jury's verdict. Specifically, it argues that the manual reduction of hours on the registers (beginning in 2012) could lead a reasonable jury to find that either the violations were committed outside the relevant time period or were not willful. Aplt. Br. at 51–52. But El Tequila's FLSA violations were established during the summary judgment proceeding — the only issue before the jury was whether those violations were willful — and we are doubtful that subsequent conduct in a later period informs that decision.

Next, El Tequila argues the jury could have reasonably found its accountant was solely to blame for any FLSA violations. Id. at 52–56. This inference is unreasonable based upon the evidence and the law. Mr. Aguirre, not his accountant, adjusted the payroll records and middle sheets to reduce hours, misrepresented facts to the WHD investigator, and instructed other employees to do the same. Furthermore, as employers, El Tequila and Mr. Aguirre, not the accountant, are ultimately responsible for FLSA compliance.

El Tequila also argues that an incorrect overtime calculation might support the jury's willfulness verdict. Id. at 57–58. Although the Secretary admitted that one of its overtime calculations was wrong, 4 Aplt. Am. App. 493, it would not be reasonable for the jury to reject the Secretary's entire willfulness case for this reason. Whether the overtime calculation was correct informs not whether the

FLSA violations were willful, but the FLSA liability determination, an issue resolved in the Secretary's favor during summary judgment. Furthermore, the miscalculation was made for an employee who worked in 2013, well outside of the relevant 2009–2010 period. 18 Aplee. Supp. App. 1484.

We also cannot agree that a jury reasonably could conclude that El Tequila's FLSA violations were committed negligently. Although Mr. Aguirre testified that he "didn't know how to [comply with the FLSA]," 4 Aplt. Am. App. 422–23, the evidence indicates that Mr. Aguirre took affirmative steps to create the appearance that El Tequila complied with the FLSA, including adjusting records to suggest that workers were properly paid, withholding documents, misrepresenting how employees were paid, and instructing employees to do the same. A reasonable jury could not conclude El Tequila's violations were negligent.

El Tequila lastly challenges the district court's amended judgment for $2,137,627.44, 3 Aplt. Am. App. 352, because the jury did not make a finding on damages, Aplt. Br. at 59–62. But the jury did not have to calculate damages because the court had already accepted the Secretary's calculation by granting its motion for summary judgment with respect to back wages and liquidated damages. Perez, 2015 WL 4173541, at *11. The court did not make a final damages calculation during summary judgment because the final amount depended "on the outcome of trial regarding . . . willfulness." Id. at *15. Once

the willfulness trial ended, the district court correctly calculated the final damages award.

AFFIRMED.  We acknowledge El Tequila's unopposed motion to correct/supplement the oral argument record and have reviewed the appendix page in question, 1 Aplt. Am. App. 120.