FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**April 5, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

MUZAFAR BABAKR,

    Plaintiff - Appellant,

v.

DR. JACOB T. FOWLES;
DR. DOROTHY M. DALEY;
DR. STEVEN W. MAYNARD-MOODY;
DR. CHARLES R. EPP; DR. HEATHER
GETHA-TAYLOR; DR. ROSEMARY
O'LEARY; DR. CARL LEJUEZ;
DR. KRISTINE LATTA; UNIVERSITY
OF KANSAS, an agency of the State of
Kansas; DR. HOLLY T. GOERDEL;
ESTATE OF REGINALD L. ROBINSON,

    Defendants - Appellees.

No. 23-3026
(D.C. No. 2:20-CV-02037-EFM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BALDOCK**, and **EID**, Circuit Judges.
_____

    Muzafar Babakr was a doctoral student at the University of Kansas

("University") School of Public Affairs and Administration ("School"). After he was

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

dismissed from the School, he sued the University, the School director, and his academic advisors, deans, and professors. He asserted claims for race and national origin discrimination in violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, first amendment retaliation and due process violations under 42 U.S.C. § 1983, and civil conspiracy under Kansas state law. After striking Mr. Babakr's untimely objection to defendants' motion for summary judgment, the district court granted the motion and entered judgment for defendants. Mr. Babakr now appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    Background

### 1. Factual Background

The following facts are taken from the statement of material facts in defendants' motion for summary judgment (MSJ) and are supported by the evidence submitted with the motion. As explained below, it is appropriate for us to rely on defendants' facts and to disregard the facts in Mr. Babakr's untimely response to the MSJ given that we uphold the district court's order striking his response.

Mr. Babakr was an international student from Iraq. In 2013, he enrolled in the School to pursue a doctoral degree in Public Administration with a specialization in Organization Theory. To complete the doctoral program, he was required to pass two comprehensive written exams. He passed the first exam in the fall of 2015. Students are given two chances to pass the second exam—the Specialization Exam—and failure to pass it on his second attempt results in dismissal from the program.

2

Mr. Babakr took the Specialization Exam for the first time in 2015 and failed. He informed School officials he would take it again in February 2016.

Four days before the exam, Mr. Babakr told School officials he would not take the exam until he had a new advisor. He also requested permission to change his area of specialization. The doctoral committee denied the request and told him he could work with a committee of advisors instead of the individual advisor assigned to him. However, he agreed to reestablish his current advising relationship and confirmed he would retake the exam in his specialization in the fall 2016 semester.

Less than two months later, he again terminated the advising relationship and again asked to change his specialization. The committee denied his request and informed him that failure to take the exam in September 2016 would be considered his second and final unsatisfactory exam. The Director of the School and the School's Director of the Doctoral Program told him that, consistent with School policy, a second failure would result in his dismissal.

In July 2016, Mr. Babakr again requested to change his specialization, and the doctoral committee again denied the request. He informed the Director of the Doctoral Program that he would not take the September 2016 exam. Later that month, he requested a leave of absence. The request was approved.

In September, Mr. Babakr asked to withdraw his leave of absence. To obtain revocation of the leave of absence, he committed to set a date to retake the Specialization Exam no later than November 2016, and to not seek to change either his specialization or his advisor. The Director of the School notified him that if he

did not retake the exam by the deadline, he would be terminated from the program for failure to make adequate progress toward degree completion.

In October 2016, the doctoral committee granted Mr. Babakr's request to sit for the exam in February 2017. He was advised that failure to retake the exam would constitute a second failure and would result in his dismissal from the program. In November, Mr. Babakr terminated his relationship with his advisor.

In January 2017, he filed a grievance with the University, complaining that he was not allowed to change his specialization and was pushed to proceed without an advisor in retaliation for threatening to bring his situation to the attention of "other appropriate parties" at the University, R., vol. 2 at 241. The grievance did not allege discrimination or retaliation based on race or national origin. Mr. Babakr's status in the School remained unchanged while the grievance was pending. The grievance was denied. He appealed the decision to the University Judicial Board (Board), which found no valid grounds for appeal and dismissed his appeal. Mr. Babakr did not seek judicial review of that decision.

While the appeal was pending, Mr. Babakr asked his former advisor, who had since been named Director of the School, to serve as his advisor again, but she declined, concluding he should work with a committee of advisors, which she offered to chair. Shortly after his appeal was dismissed, Mr. Babakr again asked to change specializations, explaining that he would fall out of legal status if he did not enroll in classes with an advisor. The new Director of the Doctoral Program declined the request and told Mr. Babakr that his path forward was to take his Specialization

4

Exam in his current specialization with a committee of advisors. A few days later, Mr. Babakr told the Director of the School he was not willing to accept a committee of advisors and said that if the School did not provide him a single advisor, he was prepared to file a lawsuit alleging that the School had failed to follow its own rules requiring that he be assigned the advisor of his choice. He did not suggest he was being treated unequally compared to other students or discriminated against based on his race or national origin.

Mr. Babakr was given an advisor and was placed on academic probation for the fall 2017 semester because he had "not made satisfactory progress towards [his] degree." *Id.* at 166. He was advised that to return to good standing, he had to pass the Specialization Exam in his current area of specialization by the end of the fall semester, and that his failure to do so would result in "dismissal from our PhD program," *id.* at 165.

Mr. Babakr again asked to change specializations, and insisted that his advisor, whose role was to assist Mr. Babakr in preparing for the exam, was not a proper advisor because he could not help plan for future semesters and his dissertation. The School declined his request to change specializations and refused to assign a long-term advisor, explaining that the first step was for Mr. Babakr to pass the Specialization Exam.

Mr. Babakr refused to sit for the exam because he did not have an advisor and was not allowed to change his specialization. He was then dismissed from the

program because, by failing to successfully complete the Specialization Exam, he had "failed to meet the terms of [his] probation." *Id.* at 167.

### 2. Relevant Procedural Background

About two years after his dismissal, Mr. Babakr filed this lawsuit. The district court's scheduling order provided that discovery was to be completed by April 2022, though unopposed discovery could continue if it did not delay the briefing or ruling on dispositive motions, which were due in June 2022. The court denied Mr. Babakr's motion for a 90-day extension of the discovery cut-off. He did not take any depositions during the discovery period.

Defendants filed a timely MSJ and shortly before the initial response deadline, Mr. Babakr moved to defer consideration of summary judgment and to reopen discovery so he could "obtain[] more complete answers to the written discovery and conduct[] depositions [that] would enable [him] to obtain" the information he needed to respond to the MSJ. *Id.* at 552. The district court denied the motion, noting his "dilatory approach to discovery and failure to show good cause for extending deadlines that should have been more than sufficient," *Id.* at 600, and concluding he had not shown that the requested discovery would produce previously unavailable facts that would create a genuine factual dispute precluding summary judgment. The court gave Mr. Babakr three additional weeks to respond to the MSJ, and it later granted his motions for three additional extensions. In the last extension order, the court warned that "[t]here will be no further extensions granted." *Id.* at 630.

6

Because his filings routinely exceeded permissible page limits, the court also directed him to review the local rule regarding page limits for the response.

On the day of the extended deadline, Mr. Babakr filed another motion for extension. He explained that before the initial response deadline, he had focused on preparing the motion to defer and other filings, so he did not start working on the response until almost two months later, when the court denied his motion to defer. He also explained that preparing the response was time-consuming because he had to "sift through thousands of pages of" documents defendants produced in discovery "to find the relevant evidence." *Id.* at 615. The district court denied the motion for extension.

Nearly two weeks after the deadline, Mr. Babakr filed a motion for leave to file an out-of-time response, together with a response that was over three times the length allowed by the local rule, and a motion to exceed the page limit. The district court denied the motion and struck the response, noting that Mr. Babakr had had over five months to prepare the response, that he had ignored the court's no-further extension order, and that he had effectively "awarded himself an even longer extension than the Court had previously denied." *Id.* at 639.

Mr. Babakr moved for reconsideration pursuant to District of Kansas Local Rule 7.3, asserting that he "did not neglect/ignore" the no-further extension order but "just could not satisfy the requirement of the Order for reasons beyond [his] control." *Id.* at 642. He said his late filing was a "single incident" of noncompliance and that it was unintentional. *Id.* He offered several explanations for not filing the response

7

on time: (1) he had been sick for seven days after the court entered the no-further-extension order; (2) he did not start working on the response until after the court denied the motion to defer; (3) preparing the response was time-consuming because of the length of the MSJ and volume of evidence defendants had produced; (4) his response was lengthy; (5) one of the previous extensions was necessitated by his child's illness; and (6) he was proceeding pro se and preparing the response was more difficult for him that it would be for an attorney.

The district court denied reconsideration, noting Mr. Babakr's "numerous motion for extensions of time" throughout the litigation, *id.* at 649, and his failure to comply with the "unequivocal[]" no-further extension order, *id.* at 650.  The district court found that the latest motion was "merely an attempt to expound upon" arguments the court had already heard and rejected, *id.* at 652.

The court then granted the MSJ and entered judgment for defendants on all of Mr. Babakr's claims.  This appeal followed.

## II.    Orders Striking Response to MSJ and Denying Reconsideration

Mr. Babakr first contends the district court abused its discretion by denying his motion to reconsider.  He does not expressly seek review of the underlying order denying his motion for leave to file the response out of time and striking the late-filed response.  However, reading his brief liberally, *see Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), and noting his reliance on the stricken response to support his arguments challenging the summary judgment order, we construe his argument as challenging both orders.

### 1. Legal Standards

We review a district court's decision on both a motion to accept an untimely filing and a motion for reconsideration for abuse of discretion. See *Quigley v. Rosenthal*, 427 F.3d 1232, 1237 (10th Cir. 2005) (motion to accept untimely filing); *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013) (motion to reconsider). We apply the same standard in reviewing an order striking a party's pleading as untimely. *See Young v. Fowler Bros. (In re Young)*, 91 F.3d 1367, 1377 (10th Cir. 1996).

Under Fed. R. Civ. P. 6(b)(1)(B), a district court has discretion to accept a party's late filing if the party files a motion showing that the delay was the result of "excusable neglect." *See also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 873 (1990) (holding that under Rule 6(b), "a post-deadline extension . . . is permissible only where the failure to meet the deadline was the result of excusable neglect" (emphasis and internal quotation marks omitted)). The determination whether a party has shown excusable neglect warranting an out-of-time extension is "an equitable one" based on "all relevant circumstances," including: (1) "the danger of prejudice to the [opposing party]"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was within the reasonable control of the movant"; and (4) "whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (discussing meaning of "excusable neglect" in bankruptcy court rule); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1494 (10th Cir. 1995) (applying *Pioneer*'s

9

definition of "excusable neglect" in Rule 6(b) context). "The most important factor is the third" and "an inadequate explanation for delay may, by itself, be sufficient to reject a finding of excusable neglect." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017).

The purpose of a motion to reconsider "is to correct manifest errors of law or to present newly discovered evidence." *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 611 (10th Cir. 2012) (internal quotation marks omitted). Grounds for granting a motion to reconsider include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (internal quotation marks omitted).; *see also* D. Kan. R. 7.3 (providing that a motion to reconsider must be based on one of the same three criteria). Such motions may not be used to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." S*ervants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

## 2. Discussion

We find no abuse of discretion in the district court's conclusion that Mr. Babakr did not show excusable neglect for his failure to file his response on time. As an initial matter, we note that his pro se status does not constitute excusable neglect for failing to file a timely response. *See Garrett*, 425 F.3d at 840 ("pro se parties [must] follow the same rules of procedure that govern other litigants." (internal quotation marks omitted)); *Quigley*, 427 F.3d at 1238 (pro se party's

10

"inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for purposes of Rule 6(b)").

Mr. Babakr complains that the district court did not consider all of the *Pioneer* factors in ruling on his motion.[1]  But the court considered the most important one— whether the delay was in Mr. Babakr's control and the reason for the delay—and it concluded that his explanations did not meet the excusable-neglect test given his dilatory litigation conduct, his failure to start working on the response until the motion to defer had been denied, and his ill-advised decision to ignore the no-further-extension order.  Those factors alone justified denying the motion.  *See Perez*, 847 F.3d at 1253 (affirming denial of motion to file out-of-time answer to operative complaint based solely on the inadequate explanation for the delay).  Thus, Mr. Babakr fails to show the district court abused its discretion by not addressing the other *Pioneer* factors.

We also reject his contention that the court's denial of his motion "had the effect of a sanction of dismissal with prejudice which should be the weapon of last, and not first, resort."  Aplt. Opening Br. at 37.  This contention is based on his misplaced reliance on *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988), in which we held that a district court abused its discretion by dismissing a pro se complaint with prejudice as a sanction for the plaintiff's violation of a local rule requiring a response to the motion to dismiss.  *See id.* at 1520-21, 1533.  That is not what the district court

---

[1] We note that Mr. Babakr did not discuss the *Pioneer* factors in his district court filings, and the district court did not cite *Pioneer* in its order.

11

did here.  It did not grant summary judgment based on Mr. Babakr's failure to file a response—it denied his motion to file an untimely response, then considered defendants' supported facts as uncontroverted and granted their MSJ based on its independent analysis of the factual and legal basis for summary judgment.  *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).

We also find no abuse of discretion in the district court's denial of Mr. Babakr's motion to reconsider.  Contrary to his contention, the court applied the correct standard in ruling on the motion.  He argues the court erred by applying the standard for reconsideration under Federal Rule of Civil Procedure 59(e) instead of the standard for reconsideration under Local Rule 7.3.  As he acknowledged in his motion, however, there is no meaningful difference between the standard for reconsideration of non-dispositive orders under those rules.  *See* R., vol. 2 at 640 ("While I am bringing this motion under D. Kan. Rule 7.3 requesting reconsideration of a non-dispositive order, the standards governing D. Kan. Rule 7.3 and Fed. R. Civ. P. 59(e) are essentially identical.").

Finally, we reject Mr. Babakr's contention that the court "misapprehended [his] position as wanting to delay the case."  Aplt. Opening Br. at 36.  That is not what the court found.  The court's finding focused on the *result* of Mr. Babakr's litigation conduct, not his intent, concluding that his pattern of seeking extensions at every step of the litigation caused delay, not that he *wanted* to cause delay.  And the record does not support his insistence that his failure to file the response by the extended deadline was outside of his control—he had five months to prepare the

response but chose to spend the first half of that time working on other filings.  After granting three extensions, the court warned him that it would not grant further extensions, then denied his fourth motion.  Instead of complying with what was arguably the most important deadline in the case, Mr. Babakr ignored the order and assumed the court would accept his late filing.  He was wrong, and we find no abuse of discretion in the court's decision to strike the late-filed response.

### III.    Order Granting Summary Judgment

### 1.  Standard of Review

"We review the district court's grant of summary judgment de novo."  *Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006).  We also "review the district court's interpretation and determination of state law de novo."  *See Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 850 (10th Cir. 2015) (internal quotation marks omitted).  We "view facts in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor."  *DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (ellipsis and internal quotation marks omitted).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of showing that no genuine dispute of material fact exists.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  To satisfy its burden, the movant "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim."  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169

13

(10th Cir. 2010) (internal quotation marks omitted).  If the movant carries his initial burden, "the burden shifts to the nonmovant to . . . set forth specific facts . . . from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671 (internal quotation marks omitted).

A district court may not grant summary judgment based on the nonmovant's failure to file a response, but a plaintiff who fails to file a timely response waives the right to respond and to controvert the facts asserted in the motion.  *Reed*, 312 F.3d at 1194; *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 (10th Cir. 2002).  And if the party opposing summary judgment fails to timely respond with evidence that creates a genuine factual dispute, the court may "consider the [movant's] fact[s] undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3); *see also Reed*, 312 F.3d at 1194-95; *Murray*, 312 F.3d at 1199-1200.

## 2.  The Title VI Retaliation Claim

Title VI provides that no person shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" because of the person's race, color, or national origin.  42 U.S.C. § 2000d; *see Baker v. Bd. of Regents*, 991 F.2d 628, 631 (10th Cir. 1993).  To be actionable, the alleged discrimination must be "intentional." *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).  And the plaintiff must produce evidence linking the allegedly adverse action "to a discriminatory or retaliatory

14

motive with something besides sheer speculation." *Bekkem v. Wilkie*, 915 F.3d 1258, 1274-75 (10th Cir. 2019) (discussing discrimination claim under Title VII (internal quotation marks omitted)); *Bryant v. Indep. Sch. Dist. No. I–38*, 334 F.3d 928, 930 n.1 (10th Cir. 2003) (recognizing that [c]ourts often use [the] Title VII proof scheme for Title VI claims").

As pertinent here, to establish a prima facie case for retaliation under Title VI, the plaintiff must show (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *See Estate of Bassatt v. Sch. Dist. No. 1*, 775 F.3d 1233, 1238 (10th Cir. 2014) (discussing retaliation claim under Title VII).

The district court granted summary judgment based on Mr. Babakr's failure to satisfy the first element, concluding that he presented "no evidence that [he] engaged in protected activity by opposing discrimination based on race . . . or national origin." R., vol. 2 at 662. In support of that determination, the court found that the materials submitted with the MSJ established that before being placed on academic probation, Mr. Babakr filed a grievance alleging "retaliation for him saying he would bring his situation to the attention of other appropriate parties," not "discrimination or retaliation based on his race or national origin." *Id.* at 658. The court further found that "[e]ven [his] threatened filing of a lawsuit—the alleged basis for [his retaliation] claim[]—did not mention or imply discrimination of any kind, much less any discrimination based on his race or national origin." *Id.* at 662-63.

15

By failing to timely respond to the MSJ, Mr. Babakr confessed the facts set forth in the motion and waived the right to controvert them. Accordingly, under Rule 56(e), the district court properly considered those facts undisputed for purposes of the motion and granted summary judgment on that basis.[2] *See Reed*, 312 F.3d at 1194.

In so holding, we disregard Mr. Babakr's recitation in his appellate briefs of facts set forth in his stricken response and we reject his attempt to put these facts into dispute on appeal. We also do not address his arguments about other facts that the district court found were undisputed but that are not material to the issues before us. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). And we reject Mr. Babakr's argument that the district court impermissibly resolved facts in defendants' favor. Those arguments are tethered to his failed challenge to the order striking his response and are contrary to our holdings in *Reed*, *Murray*, and *Perez*.

### 3. The constitutional and § 1983 conspiracy claims

The district court granted summary judgment for defendants on Mr. Babakr's constitutional and § 1983 conspiracy claims on qualified immunity grounds. We

---

[2] Because we affirm the district court's determination that defendants were entitled to judgment based on Mr. Babakr's failure to show he engaged in protected opposition to discrimination, we need not address their argument that we can affirm the judgment based on his inability to prove causation, an issue the district court did not address.

review that ruling de novo. *See Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).

When a defendant asserts qualified immunity at summary judgment, "the burden shifts to the plaintiff to overcome the asserted immunity." *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1153 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 2658 (2023) (internal quotation marks omitted). To meet this burden, the plaintiff must show both (1) that the defendant violated his constitutional or statutory rights; and (2) that the right was clearly established at the time of the violation. *Gutteridge*, 878 F.3d at 1238. "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

The district court held that Mr. Babakr failed to meet his burden because he did not timely respond to the MSJ. The court thus concluded that defendants were entitled to summary judgment on his constitutional and § 1983 conspiracy claims.

Mr. Babakr takes issue with that ruling, insisting that the court was required to reach the merits of his claims. But the plaintiff's failure to meet his burden "requires" the court to grant qualified immunity. *Paugh*, 47 F.4th at 1153; *see also Rojas v. Anderson*, 727 F.3d 1000, 1003-04 (10th Cir. 2013) (upholding summary judgment on qualified immunity grounds where plaintiff's response "made little, if any, attempt to meet his heavy two-part burden," and "[w]ithout any such argument, Defendants were entitled to qualified immunity" (internal quotation marks omitted));

17

*Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013) (affirming summary judgment where plaintiff failed to respond to defendants' assertion of qualified immunity, and recognizing that his failure to carry his burden meant "we will never know" whether he had "a meritorious case").  And Mr. Babakr's focus on what he claims were genuine issues of material fact is unavailing because by failing "to meet his burden on the *legal* qualified immunity question"—the existence of a clearly established constitutional or statutory violation—"this traditional summary judgment burden" of showing that there are no genuine issues of material fact "never shifted back" to defendants.  *Rojas*, 727 F.3d at 1005 (internal quotation marks omitted).[3]

### 4.  The state-law conspiracy claim

We also uphold the district court's grant of summary judgment for defendants on Mr. Babakr's state-law civil conspiracy claim.

To prevail on a civil conspiracy claim under Kansas law, the plaintiff must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."  *Stoldt v. City of Toronto*, 678 P.2d 153, 161 (Kan. 1984) (internal quotation marks omitted).  "Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy."  *Id.*

---

[3] Because we affirm the grant of summary judgment based on Mr. Babakr's failure to meet his qualified-immunity burden, we need not address defendants' arguments that his claims failed on the merits.

18

The unlawful acts Mr. Babakr alleged as the basis for his common law conspiracy claim were that defendants refused to give him a long-term advisor until he passed the Specialization Exam, put him on probation, and dismissed him from the doctoral program in retaliation for his threat to sue the School. *See* R., vol. 1 at 150-51. Based on the uncontroverted facts that were supported by defendants' summary judgment evidence, the district court found there was "simply no evidence" that defendants' decisions were "related to [his] threat." R., vol. 2, at 664. Instead, the court found that the "dismissal was fully warranted under school policy" and that he presented no evidence supporting his allegation that "[d]efendants' conduct was unlawful under any theory." *Id.*

Mr. Babakr argues that the independent wrongful act underpinning his state-law conspiracy claim was "the first amendment retaliation," Aplt. Opening Br. at 53, and that the district court erred by granting summary judgment on the constitutional claim without addressing the merits, then concluding he failed to present evidence of a wrongful act. But his state-law conspiracy claim relied on the same retaliation assertions he made in support of his constitutional claims, and by not filing a timely response to the MSJ, he failed to present facts supporting those assertions and refuting defendants' summary judgment evidence. We have already upheld the district court's grant of summary judgment on the constitutional claims because Mr. Babakr failed to meet his burden to show that defendants' conduct violated a clearly established right. He has likewise failed to prove that the same conduct was an unlawful act for purposes of his state-law conspiracy claim.

## IV.    CONCLUSION

We affirm the district court's grant of summary judgment for defendants.

Entered for the Court

Bobby R. Baldock
Circuit Judge