No. 22345.

John P. Gladden and Rena L. Gladden *v.* Louis V. Guyer, Irma C. Guyer, Wayne E. Booker, Frances G. Booker, Edwin W. Hayes, and Garnet L. Hayes.
(426 P.2d 953)

Decided May 1, 1967.

452

FOARD, FOUTCH & HUNT, RECTOR and KANE, for plaintiffs in error.

MURRAY, BAKER & WENDELKEN, LEON H. SNYDER, GERALD W. BENNETT, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to the plaintiffs in error as the Gladdens or as plaintiffs, as they appeared in the trial court. The defendants in error will be referred to as the defendants or as the sellers.

The Gladdens bought a dairy farm in El Paso County from the sellers for a purchase price of $350,000. The transaction was consummated on June 15, 1964, and the

Gladdens took possession of the lands, improvements and dairy herd on July 1, 1964. As a result of bovine tests conducted immediately after the Gladdens took possession of the dairy herd, it was ascertained that a number of the cows were infected with brucellosis and tuberculosis. This information became known to the Gladdens on July 9, 1964 — nine days after they had taken possession of the herd.

The Gladdens did not institute suit against the sellers until March, 1965. At that time, although they alleged four causes of action, their complaint has only two claims. Under "Causes of Action" numbered 1, 2 and 4, one remedy — rescission — is sought; and under "Cause of Action" number 3, damages are prayed for.

Prior to trial the Gladdens, by order of the court, were required to elect which remedy they intended to pursue at the trial, i.e., rescission or damages. They filed a written election asking the court for rescission. The sellers, in a counterclaim, prayed the court to order specific performance of the contract of purchase, and it was on these issues that trial was had.

At the close of all the evidence the court entered its findings of fact which are hereby summarized as follows:

1. The defendants had full knowledge of the existence of the diseased animals prior to the negotiations and during the period of negotiation and that the defendants displayed a State Department of Agriculture certificate certifying that the herd was free of brucellosis and the plaintiffs had seen said certificate during the negotiations.

2. That the existence of brucellosis was a material fact to the entire transaction, and the discovery of the disease was not available through ordinary inspection, and in the absence of disclosure of the disease the plaintiffs had the right to rely upon the herd being free of the disease.

3. The herd had not been tested for tuberculosis since February 5, 1962 until July 6, 1964, and the de-

fendants did not know of the existence of tuberculosis and did not conceal that fact from the plaintiffs.

4. That the plaintiffs by remaining in possession of the animals after the discovery of the disease and by their exercise of full control and dominion over all the property ratified the contract. The acts of the plaintiffs in refusing to sell the property at a modest profit and thereafter negotiating for a loan with which to purchase additional cattle, all done with the knowledge that the defendants had concealed the disease evidenced an intention to affirm the contract.

The court then concluded that the sellers were under a duty to disclose their knowledge of brucellosis infected cows in the herd, and that their failure to do so constituted fraud. The court also held that as to those cows which were found to react to the test for tuberculosis, the existence of the disease was not known to the sellers and hence no fraud or deceit was involved. The court then concluded that the Gladdens, with knowledge of the concealment, engaged in a course of conduct which evinced an intention to affirm the contract and that the remedy of rescission was therefore lost to them. The court entered a judgment in favor of the sellers and further entered a decree requiring specific performance of the contract by the Gladdens.

The points relied upon on this writ of error for reversal of the judgment are:

I. The court properly found that the defendants defrauded the plaintiffs, but there was a gross insufficiency of evidence for the court to find that the plaintiffs, at any time, intended to affirm the contract. The evidence adduced at trial regarding ratification and affirmation was insufficient as a matter of law.

II. The court committed error in law when it found that although the defendants did not comply with the requirements of 8-5-40, C.R.S. 1963, as to the testing of the herd prior to sale and as to the submission of an official brucellosis certificate, their failure to do so

did not render void the contract of sale entered into by the parties.

III. The court committed error in law when it required the p'aintiffs to elect between their causes of action prior to trial.

I.

On this assignment, the most that can be said for the Gladdens' contention is that there was a dispute as to the time when they became aware of the fact that the sellers had knowingly misrepresented the condition of the herd and had knowingly concealed the presence of brucellosis in the herd. The Gladdens contend that the critical date was November, 1964, and that a letter of rescission was sent to the sellers in December — after legal counsel had been consulted. There is other evidence that the fact of misrepresentation, sufficient to require immediate and unequivocal action to rescind, was known as early as July 9, 1964. That there is support for the court's finding of the latter date rather than the November date as the time when the Gladdens were aware of the misrepresentation, we quote from the testimony of plaintiff John Gladden:

"Q. And you didn't feel that things had been misrepresented to you then after you got the results of these tests?

"A. *I knew they had been.*

"Q. Oh, you knew immediately, then, *after the results of these July 6th tests that things had been misrepresented to you?*

"A. *That is correct.*

"Q. But you felt you were reasonably protected under the terms of the agreement?

"A. I had my name on $183,000 note, plus all of my stuff mortgaged on it, plus my name on that contract.

"Q. But you made no complaint about this misrepresentation until when?

"A. I complained to Mr. Booker every time I seen him.

"Q. All right, I understood you to say that you felt

that you were reasonably well protected under the contract until such time as they didn't keep their agreement the latter part of October?

"A. I thought I had the law on my side, yes.

"Q. Well, what I was trying to get at, when did you start complaining about these misrepresentations?

"A. The day the test was run, or the day *the test was read I started complaining.*

"Q. And who did you complain to?

"A. To Mr. Booker.

"Q. And what did you say to him?

"A. I let him know that I wasn't satisfied, and I told him *he had misrepresented the herd to me.*

"Q. But you kept right on in possession of the property, operating the dairy for some months after that?

"A. I felt I had to." (Emphasis added.)

In Richardson v. Lowe, 149 Fed. 625, the court stated:

"* * * *The duty of rescinding arises immediately upon acquiring knowledge of the substantial and material facts constituting the fraud. It is not requisite that the defrauded party shall be acquainted with all the evidence constituting the fraud before the duty to act by way of rescission arises.* Campbell v. Fleming, 1 A. & E. 40; Fry on Specific Performance of Contracts (2nd Ed.) §§ 703, 704; Bach v. Tuch, 126 N.Y. 53, 26 N.E. 1019; Taylor v. Short, 107 Mo. 384, 17 S.W. 970. When he has evidence sufficient to reasonably actuate him to rescind the contract and on which he has once acted, no subsequent discovery of cumulative evidence can operate to excuse waiver of the fraud if one has in the meantime occurred, or to revive a once lost right of rescission. The election to waive the fraud once deliberately made is irrevocable. Vacillation or speculation cannot be tolerated. See cases supra." (Emphasis added.)

Subsequent to the discovery of brucellosis in the herd, and prior to any action which could be characterized as a repudiation of the sale, the Gladdens engaged in a

course of action which the court found precluded the remedy of rescission. The following are transactions which the court had before it:

Consummation of a $183,000 loan; the obtaining of two ninety day extensions thereon, and further extensions thereon to run to January 15, 1966; payment on the loan in excess of $65,000; the entering into an agreement on August 12, 1964 whereby the sellers agreed to give to the Gladdens calves and farm machinery to replace cattle culled from the herd after being found to be infected with the diseases; reaffirming the sales contract in that same "settlement agreement" by the words, "It is understood and agreed by the parties that the other conditions of the June 15, 1964, agreement shall continue in full force and effect"; the obtaining of a feed loan in September, 1964; payment to the sellers of the sum of $42,000 on October 30, 1964 as provided in the original sales contract and the reaffirmation agreement in August; negotiation for a new loan of $50,000 for purchase of 200 cattle on December 1, 1964, which was not consummated; sale of calves from the herd commencing in January, 1965, and continuing during the pendency of the law suit. Throughout the entire period the Gladdens exercised exclusive ownership and dominion and control over the dairy, its equipment and the herd; in addition, they conducted the dairy business, sold the milk, made payments on their loans out of the proceeds, sold the calves and used the proceeds for their own benefit.

In *Shappiro v. Goldberg*, 192 U.S. 232, 24 S. Ct. 259, 48 L. Ed. 419, the United States Supreme Court stated the following:

"It is well sett'ed by repeated decisions of this court that where a party desires to rescind upon the ground of misrepresentation or fraud, he must upon the discovery of the fraud announce his purpose and adhere to it. If he continues to treat the property as his own the right of rescission is gone, and the party will be

held bound by the contract. (citing Grymes v. Sanders, 93 U.S. 55, 63 L. Ed. 798)

"* * * If he choose the latter remedy [rescission], he must act promptly, 'Announce his purpose and adhere to it,' *and not by acts of ownership continue to assert right and title over the property as though it belonged to him. * * *"* (Emphasis added.)

■ The actions of the Gladdens, even after the period in November when they claim they first had knowledge of the misrepresentation, are totally irreconcilable with conduct required under the law of rescission. Until the trial court ordered the Gladdens to elect their remedy in September of 1965 — a period of about six months after they had filed their complaint for alternative remedies — the Gladdens at no time ever attempted unconditionally to rescind the contract. A letter sent to the seller by an attorney in December of 1964 was equivocal and suggested an alternative remedy to that of rescission. In *Richardson v. Lowe, supra,* where the party seeking to rescind had continued what the court characterized as dominion over the property, we find the following apt quotation:

"The exploitation and operation of the mines as shown by the record not only after the admitted knowledge of the fraud, but after the defendants *had pleaded it as a ground of rescission of the contract* of purchase are totally inconsistent with the right of rescission. They evince a continued ownership and interest in the mines rather than a repudiation of the contract *and a holding of the mines for the benefit of the vendors,* and afford conclusive evidence that the vendees waived the fraud and affirmed the contract of purchase * * *." (Emphasis added.)

This court's pronouncements are in complete harmony with the law as enunciated in the United States Supreme Court cases and the Richardson v. Lowe case, supra. See *Stoner v. Marshall,* 145 Colo. 352, 358 P.2d 1021; *Wark v. Bopp,* 119 Colo. 12, 111 P.2d 892; *Tisdel v. Bank,*

90 Colo. 114, 6 P.2d 912; *Lowe v. Howell,* 64 Colo. 100, 170 Pac. 180; *Halm v. Wright,* 63 Colo. 419, 168 Pac. 36; *Brown v. The Gordon-Tiger Company,* 44 Colo. 311, 97 Pac. 1042.

■ Additionally, we note from the record that there was no attempt at any time to tender back that which had been received or to maintain the status quo so as to be able to return it to the sellers in substantially the same condition as it was when first received. On the duty to return the property along with an election to receive, this court said in *Tisdel v. Bank, supra:*

"When one is induced through false and fraudulent representations to enter into an agreement, upon discovery thereof, he has an election to either rescind, *in which event he must tender back that which he has received* or he may affirm the agreement and maintain his action in damages for deceit, but his election must be *promptly* made and when once made is final." (Emphasis added.)

II.

■■ On the second ground, regarding the effect of C.R.S. 1963, 8-5-40, we are urged to find that the violation of the statute renders the contract void *ab initio.* It is for the legislature and not the judiciary to determine the penalty for violation of a statute. *Fritts v. Palmer,* 132 U.S. 282, 10 S. Ct. 93, 33 L. Ed. 317. The penalty provided by the legislature for failure to provide a brucellosis certificate with the sale of the cattle is a fine of not less than $25 and not more than $500, or imprisonment not to exceed 90 days, or both. To declare void a contract entered into without such certificate would be enlarging upon the penalties provided by the legislature. At most, therefore, we find that the contract was merely voidable. For the same reasons which demonstrate that the Gladdens' actions indicate affirmance of the contract, we hold that they did not elect to void the contract.

460

## III.

■ The final ground upon which the Gladdens predicate error is that they were compelled by the trial court to elect their remedy prior to trial. We are cognizant of Rule 18, R.C.P. Colo. but under the particular circumstances of this case we hold that the election requirement ordered by the court was not prejudicial. It appeared from the pleadings and the depositions before the court at the time the motion for election was filed that by the agreement of August 12, 1964 the Gladdens had already accepted damages and that the only issue left to be tried was whether the remedy of rescission was available to them subsequent to November, 1964 — the date which the Gladdens contend was the crucial date upon which they acted to rescind the agreement.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE SUTTON and MR. JUSTICE PRINGLE concur.